# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| NAKIA LEA MICHAEL, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | Case No. 4:14-cv-01445-JAR |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Nakia Michael's ("Ms. Michael") applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, et seq., and supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381–85.

### I. Background

Ms. Michael filed her application for supplemental security income and disability insurance benefits on February 28, 2011, and March 3, 2011 respectively. (Tr. 128-143) The Social Security Administration ("SSA") denied Ms. Michael's applications on May 12, 2011. (Tr. 68-70) She filed a timely request for a hearing before an administrative law judge ("ALJ") on July 11, 2011. (Tr. 83-84) Following a hearing, the ALJ issued a written decision on December 27, 2012, upholding the denial of benefits. (Tr. 22-40) Ms. Michael requested review of the ALJ's decision by the Appeals Council. (Tr. 21) On June 20, 2014, the Appeals Council

denied Ms. Michael's request for review. (Tr. 4-8) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Ms. Michael filed this appeal on August 19, 2014. (Doc. 1) The Commissioner filed an Answer. (Doc. 6) Ms. Michael filed a Brief in Support of her Complaint. (Doc. 12) The Commissioner filed a Brief in Support of the Answer. (Doc. 15)

**II.     Decision of the ALJ**

The ALJ determined that Ms. Michael meets the insured status requirements of the Social Security Act through December 31, 2015, and had not engaged in substantial gainful activity since March 12, 2010, the alleged onset date of disability. (Tr. 27) The ALJ found Ms. Michael has the severe impairments of major depressive disorder and anxiety disorder but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 27-28)

After considering the entire record, the ALJ determined Ms. Michael has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember and carry out at least simple instructions and non-detailed tasks; she should not work in a setting which includes constant or regular contact with the general public; and she should not perform work that includes more than infrequent handling of customer complaints. (Tr. 29) The ALJ found Ms. Michael unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that she can perform, including unarmed office worker, housekeeping cleaner, and kitchen helper. (Tr. 34-35) Thus, the ALJ concluded that a finding of "not disabled" was appropriate. (Tr. 35) Ms. Michael appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

#### A. Hearing Testimony

The ALJ held a hearing in this matter on October 18, 2012. The ALJ heard testimony from Ms. Michael and Robin Cook, a vocational expert. (Tr. 41-67)

##### 1. Ms. Michael's testimony

At the time of the hearing, Ms. Michael was living with her husband, her son, and her daughter. (Tr. 44) Her son was 14 and her daughter was 10. (Tr. 44-45) She has a year of college education and she took some online classes on and off until 2008. (Tr. 45)

Ms. Michael worked as a customer service representative for ten and a half years until 2009 when she had a nervous breakdown. (Tr. 47) Although she was rushed to the hospital from work, she was not admitted and returned to work until March 12, 2010. (Tr. 47-48) Her official resignation date was June 14, 2010. (Tr. 48) Ms. Michael testified that because she could not afford it, she was not seeking treatment the entire time she was off work. (Tr. 49) However, she was on medication for the psychiatric issues during this period. (Id.) The medication was not working but she cannot afford to see a psychiatrist to change the medication. (Tr. 54)

Ms. Michael's counsel stated that Ms. Michael has been diagnosed with major depressive disorder, which has been characterized as recurrent, severe, with psychotic features that include auditory and visual hallucinations. (Tr. 49-50) Ms. Michael testified that she still has problems with hearing and seeing things that are not really there. (Tr. 53)

On a bad day, because of the depression, Ms. Michael says she will get up and get her children to the bus but then she will go back to bed. (Tr. 51) She is unable to start any laundry or

cook dinner. (Tr. 52) The auditory hallucinations are worse on these days. (Tr. 53) She experiences these bad days one to two days a week. (Tr. 52)

Ms. Michael's counsel also indicated that Ms. Michael has been diagnosed with some anxiety related disorders and post-traumatic stress disorder. (Tr. 55) Ms. Michael testified that these disorders are a result of sexual and physical abuse as a child. (Id.) She experiences thoughts that relate back to these incidents about 75 percent of a seven day week. (Id.) When she is triggered, she runs and locks herself in a room by herself. (Tr. 56) She has to avoid going out in public. (Id.) She also finds it hard to stay on task. (Tr. 58)

Ms. Michael's counsel additionally stated that Ms. Michael has been diagnosed with migraine headaches. (Tr. 57) She has a migraine about once or twice a month. (Id.) She previously took medication for it as a child but she no longer does. (Id.)

### 2. Testimony of Vocational Expert

Vocational expert, Robin Cook ("Cook"), testified regarding Ms. Michael's vocational history as follows. Ms. Michael has been a customer service representative, financial institution, code 205.362-026, with a specific vocational preparation ("SVP") of 6 and classified by the Dictionary of Occupational Titles ("DOT") as light work. (Tr. 60) She also worked as a fast food worker, code 311.472-010, with an SVP of 2, classified as light work but performed at the medium exertional level, as a cashier in a grocery store, code 211.462-014, with an SVP of 3, classified as light work but performed at the medium exertional level, and as a childcare center worker, code 359.677-018, with an SVP of 4, classified as light work but performed at the medium exertional level. (Tr. 60-61)

For hypothetical one, the ALJ asked Cook to assume a person limited to unskilled work who cannot perform work that includes more than infrequent handling of customer complaints

and should not work in a setting that includes constant regular contact with the general public. (Tr. 61) Cook determined that such a person would not be able to perform any of Ms. Michael's past work. (Id.) However, such a person would be able to perform a job such as office helper, 239.567-010, light work, and an SVP of 2. (Tr. 62) There are 83,250 jobs nationally available and 1,810 such jobs available in Missouri. (Id.) In addition, such a person could perform the job of a housekeeping/cleaner, 323.687-014, light work, and an SVP of 2. (Id.) There are 877,980 jobs nationally available and 19,790 such jobs available in Missouri. (Id.) Such a person could also perform the job of kitchen helper, code 318.687-010, medium exertional level, and an SVP 2. (Id.) There are 9,832 such jobs in Missouri and 504,280 nationally. (Id.) Cook further testified that her testimony was consistent with the DOT and the Selected Characteristics of Occupations. (Id.)

Ms. Michael's attorney asked Cook how her opinion would be impacted if she took the hypothetical and included the limitation of a person who would miss a day a month of work. (Tr. 63) Cook responded that this limitation would likely eliminate all of the jobs she mentioned because in most simple, unskilled work, an individual needs to work for a probationary period wherein he or she cannot miss any time. (Id.) Counsel then asked Cook how the original hypothetical would change if such a person had an issue maintaining his or her persistence, pace, and concentration and is also unable to do so for a consistent two hour period (Tr. 65) Counsel futher indicated that such a person might be off task during the workday as much as 10 minutes of every hour. (Id.) Cook responded that either of these limitations would preclude employment. (Id.)

### B. Medical Records

The ALJ summarized Ms. Michael's medical records at Tr. 27-35. Relevant medical records are discussed as part of the analysis.

### IV. Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation

process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the

claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. The Commissioner may refer to the Medical-Vocational Guidelines or "Grids," 20 CFR Part 404, Subpart P, Appendix 2,[1] to meet this burden. Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F. Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;

---

[1] The Grids "are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability." Phillips v. Astrue, 671 F.3d 699, 702 (8th Cir. 2012). "If the ALJ's findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either 'disabled' or 'not disabled') directed by the relevant Rule or line of the applicable Table." Id. (quoting Reed v. Sullivan, 988 F.2d 812, 816 (8th Cir. 1993)).

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

V.     **Discussion**

In her appeal of the Commissioner's decision, Ms. Michael raises three issues. First, Ms. Michael asserts that the ALJ failed to properly weigh the medical evidence. (Doc. 12 at 11-18) Second, Ms. Michael argues that the ALJ failed to properly evaluate her credibility. (Id. at 18-21) Third, Ms. Michael asserts that the appeals council failed to consider new and material evidence. (Id. at 21-23) Because the Appeals Council erred in failing to consider new and material evidence, the Court will only address that issue.

After the ALJ's decision, Ms. Michael submitted additional medical evidence to the Appeals Council. (Tr. 8, 11-20, 418-451) One such piece of evidence was a Psychiatric/Psychological Impairment Questionnaire from Dr. Jordan Balter ("Dr. Balter") dated October 2, 2013 ("the Report"). (Tr. 11-20) However, the Appeals Council declined to review the Report or include it in the record, concluding,

> The Administrative Law Judge decided your case through December 27, 2012. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before December 27, 2012.

(Tr. 5) Ms. Michael argues that the Appeals Council should have considered the evidence counsel submitted because in the Report Dr. Balter notes that Ms. Michael's symptoms and limitations as described were present for many years and retrospective medical findings constitute relevant evidence that must be considered.

Pursuant to 20 C.F.R. § 404.970(b),

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the

> administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision.

"Under this regulation, if a claimant files additional medical evidence with a request for review prior to the date of the [Commissioner's] final decision, the Appeals Council MUST consider the additional evidence if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990) (emphasis in original). "'To be "new," evidence must be more than merely cumulative of other evidence in the record.'" Lamp v. Astrue, 531 F.3d 629, 632 (8th Cir. 2008). "Medical evidence . . . is material if it relates to the claimant's condition on or before the date of the ALJ's decision." Williams, 905 F.2d at 216. The Appeals Council's failure to consider the evidence "may be a basis for remand by a reviewing court." Box v. Shalala, 52 F.3d 168, 171 (8th Cir. 1995).

The Court finds Dr. Balter's Report to be "material." Dr. Balter's Report relates to the claimant's condition on or before the date of the ALJ's decision. Specifically, Dr. Balter indicates that the earliest date that the description of symptoms and limitations in the Report apply was more than 10 years ago. (Tr. 19) He also notes that "Patient has long history of severe PTSD." (Id.) Like in Williams where the doctor's report noted, "[t]his patient has suffered from chronic mental illness since her early adult hood [sic]," Dr. Balter's statements provide a sufficient basis to conclude that his Report relates to the period on or before the December 27, 2012, date of the ALJ's decision. Williams, 905 F.2d at 216.

After careful review, the Court also finds Dr. Balter's Report to be "new" for purposes of section 404.970(b). While the Report is primarily a checklist and such checklists are traditionally disfavored, the Court's role is not to determine the weight to be afforded the new evidence but to

determine whether the evidence should have been considered by the Appeals Council. Lamp, 531 F.3d at 632. In this case, the Report is not merely cumulative of the evidence on the record. The medical evidence on the record regarding Ms. Michael's mental impairment is somewhat limited. Her primary care physician, Dr. Michael Patterson, treated her anxiety and depression, however Ms. Michael saw mental health professionals intermittently. (*See* Tr. 293-294, 296-297, 300, 301-316, 317-360) The ALJ noted this issue in her decision, stating, "The medical treatment records do not document ongoing and frequent treatment through a psychiatrist, psychologist or counselor." (Tr. 32) Therefore, the Report provides some additional, relevant information regarding Ms. Michael's mental health condition.

Relying on Jones, the Commissioner asserts that the Report must overcome another hurdle: "[i]t must be reasonably likely that the Commissioner's consideration of this new evidence would have resulted in an award of benefits." (Doc. 15 at 14-15) (citing Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997)). However, Jones is inapplicable here because the new evidence in the Jones case had not been presented to the Commissioner, but instead was presented for the first time before the District Court. Jones, 122 F.3d at 1154. When new evidence is not a part of the administrative record, 42 U.S.C. § 405(g) and the additional requirement articulated in Jones apply to the Court's analysis of this new evidence. See, e.g., Haley v. Astrue, No. 4:11CV628 FRB, 2012 WL 4856959, at *14 (E.D. Mo. Oct. 12, 2012) (applying Jones in the Court's section 405(g) analysis). However, that is not the case when the new evidence is presented before the Appeals Council. As previously articulated, in those situations 20 C.F.R. § 404.970(b) applies and the Court may remand a case when the Appeals Council has not considered evidence that is "(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Williams, 905 F.2d at 216.

Therefore, because the Court found that the Report is new and material, the Appeals Council erred in refusing to consider it and the case will be remanded.

### VI. Conclusion

For the foregoing reasons, the Court finds the Commissioner's decision should be reversed and remanded. On remand, the Commissioner shall reconsider its previous decision in light of the evidence on the record as a whole including Dr. Balter's Report.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate Judgment will accompany this Order.

Dated this 30th day of September, 2015.

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**